UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HELENE E. HAGENAH,                    )
                                      )
        Plaintiff,                    )
                                      )
            v.                        )        Case No. 15-cv-30036-KAR
                                      )
COMMUNITY ENTERPRISES, INC., et al.,  )
                                      )
        Defendants.                   )

MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' PARTIAL MOTION
TO DISMISS PLAINTIFF'S AMENDED COMPLAINT, MOTION TO STRIKE, AND
ALTERNATIVE MOTION FOR MORE DEFINITIVE STATEMENT
(Dkt. No. 19)

ROBERTSON, U.S.M.J.

I.    INTRODUCTION

On March 4, 2015, plaintiff Helene E. Hagenah ("Plaintiff") filed a complaint against

defendants Community Enterprises, Inc. ("Community Enterprises"), Victoria Fisher, and Lisa

Kenney (collectively, "Defendants") arising out of her agreement with Community Enterprises to

provide adult care services and housing for two participants in Community Enterprises' adult

care program for disabled individuals.  In her amended complaint (the "Complaint"), Plaintiff

asserted the following causes of action: in Count I, discrimination and retaliation in violation of

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); in Count II,

retaliation and interference in violation of the Americans with Disabilities Act of 1990, 42

U.S.C. §§ 12203(a) and (b) ("the ADA"); in Count III, retaliation in violation of the

Developmental Disabilities Assistance and Bill of Rights Act of 2000, 42 U.S.C. § 15001 et seq.

(the "DD Act"); in Count IV, retaliation and interference under sections (4)(4), 4(4A), and 4(5)

of Chapter 151B of the Massachusetts General Laws ("Chapter 151B"); in Count V, breach of

contract; in Count VI, interference, independent employment; and in Count VII,

misrepresentation (Dkt. No. 5).[1]

Before the court is Defendants' motion to dismiss, seeking dismissal in whole or in part of each of the counts in the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Civil Rules").  Defendants have further moved, pursuant to Rule 12(f) of the Civil Rules, to strike Plaintiff's request for civil penalties against Defendants, and, if Count VII is not dismissed, for a more definite statement pursuant to Civil Rule 12(e) (Dkt. Nos. 19; 23). Plaintiff has agreed to dismissal of Count VI with prejudice and to dismissal of Count VII without prejudice, and otherwise opposes the motion (Dkt. Nos. 30; 36-1).

The parties have consented to the jurisdiction of this court.  *See* 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  For the reasons set forth below, the court grants Defendants' motion in part and denies it in part.

II.     SUMMARY OF FACTUAL ALLEGATIONS

In 2013, Plaintiff began providing housing and caretaking services for two developmentally and physically disabled adults participating in Community Enterprises' adult care program (Dkt. No. 5 at ¶ 8).  Before Plaintiff began providing these services, Plaintiff, Community Enterprises, and each adult participant signed a Letter of Agreement, dated respectively April 24 and June 24, 2013, setting forth the responsibilities of the caregiver, the participant, and Community Enterprises (Dkt. No. 5 at ¶¶ 21-24; Dkt. No. 23-1; Dkt. No. 23-2).[2] Separately executed Payment Agreements were attached to each of the Letters of Agreement

---

[1] The Complaint is, in effect, verified as it incorporates by reference an attached 129-paragraph affidavit signed by Plaintiff (Dkt. No. 5-1).  The Complaint is referenced herein as "Dkt. No. 5," while the incorporated affidavit is referenced as "Dkt. No. 5-1."

[2] In ruling on Defendants' motion, the court relies on the Letters of Agreement attached to Defendants' motion because these documents are referenced in, and central to, Plaintiff's complaint.  *See Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007).

(Dkt. No. 23-1 at 5; Dkt. No. 23-2 at 6).[3]  As the caregiver, Plaintiff's responsibilities included, but were by no means limited to, ensuring that the participants were full members of the household; providing clean and attractive living quarters; doing the participants' laundry; providing three nutritionally balanced meals daily, as well as snacks; and ensuring that the residence was properly maintained so that it remained in compliance with all eligibility criteria (Dkt. Nos. 23-1; 23-2).  Community Enterprises was required to, among other things, maintain and continue to develop new liaisons with social and health agencies for the purpose of identifying local resources that could be used by the participants; ensure coordination of health-related services as needed; provide orientation sessions for the caregiver, and provide the caregiver with specialized teaching sessions focusing on the identified needs of the participants (Dkt. No. 23-1; Dkt. No. 23-2).

According to the Payment Agreements, both participants living with Plaintiff agreed to pay monthly room and board to Plaintiff (Dkt. No. 23-1 at 5; Dkt. No. 23-2 at 6).  Community Enterprises determined the amount the participants paid for room and board (Dkt. No. 23-1 at 3; Dkt. No. 23-2 at 3).  Plaintiff also received a monthly stipend from Community Enterprises at a set daily rate (Dkt. No. 23-1 at 5; Dkt. No. 23-2 at 6).  The Payment Agreements provided that the stipend was contingent on the participant maintaining active status with MassHealth; if the participant's MassHealth eligibility ended for any reason, even temporarily, Community Enterprises would not pay the stipend until the participant was reinstated on MassHealth (Dkt. No. 23-1 at 5; Dkt. No. 23-2 at 6).

---

[3] The Letters of Agreement were virtually identical except that one included an addendum, signed by Plaintiff, Community Enterprises representatives, and the participant, imposing some additional obligations on the participant, and limiting Plaintiff's responsibility for control of the participant's finances and cigarette smoking (Dkt. No. 23-2 at 5).

In summary, the Complaint alleges that Defendants violated many of the participants' civil rights and that Plaintiff objected to these alleged violations (Dkt. No. 5 at ¶¶ 30-33). Plaintiff alleges that she assisted the participants in exercising their rights to report employment problems and to oppose discriminatory conduct and abuse (*id.* at ¶¶ 30-32), and assisted one of the participants in filing a formal charge of discrimination (*id.* at ¶ 31).[4]  Plaintiff further claims that Defendants retaliated against her for advocating for the participants and because she raised claims of discrimination and related claims on her own behalf (*id.* at ¶ 33).

Defendant Lisa Kenney ("Kenney") is the Program Manager and Human Rights Officer of Community Enterprises (*id.* at ¶ 10).  As the Human Rights Officer, Kenney provided the participants living with Plaintiff with documents explaining their "human rights, employment rights, community participation rights, self-determination rights, and some of their Constitutional rights" (*id.* at ¶ 25).  Kenney also provided them with a handout titled "Ten Performance Standards for Staff" and another handout describing the human rights complaint process (*id.* at ¶¶ 27-28).  Plaintiff alleges that Kenney violated rights of the participants set forth in these documents (*id.* at ¶¶ 30-33) and identifies particular incidents of alleged misconduct by Kenney (*e.g.*, Dkt. No. 5-1 at ¶¶ 60-66).  Plaintiff alleges that the participants reported to her that Kenney would become angry and yell at them and coerced them into making statements they did not want to make (*e.g.*, *id.* at ¶¶ 88, 94, 99, 103).  Plaintiff also alleges that during a September 12, 2013 meeting, where one of the participants (the subject of the meeting) and Plaintiff's attorney was present, Kenney became visibly angry and "exclaimed 'We pay for this place,'" in regard to Plaintiff's home, and allegedly made other "aggressive" statements, including that the attorney would "ruin" everything (*id.* at ¶¶ 65-66).   Plaintiff believed by this point that Community

---

[4] The Complaint does not identify the respondent(s) to this action (Dkt. No. 5 at ¶ 31).

Enterprises was retaliating against her for "standing up for the rights of the two disabled individuals" for whom she provided home care and supervision (*id.* at ¶ 69).

Defendant Victoria Fisher ("Fisher") is the director of the Community Enterprises Pittsfield office (Dkt. No. 5 at ¶ 9). According to Plaintiff, after Plaintiff's September 12, 2013 meeting with Kenney, Fisher asked Plaintiff to meet with her without her attorney present (Dkt. No. 5-1 at ¶ 71). Plaintiff responded by email to Fisher, expressing her many concerns about the adult care program, advocating on behalf of the participants living with her, and stating that she intended to send a copy of her email to the Massachusetts Disabled Persons Protection Commission (*id.* at ¶¶ 72, 77, 81, 85-86). Subsequent to sending her email to the Commission, Plaintiff became concerned about the way the two participants were being treated, particularly by Kenney, and that she, Plaintiff, was being shut out of decision-making processes regarding the participants, including meetings and appointments that the participants requested she attend (*id.* at ¶¶ 88-106). On October 7, 2013, Plaintiff's attorney sent a letter to Fisher setting forth potential claims on behalf of one of the participants (*id.* at ¶ 107). Two days later, Plaintiff received a letter from Fisher requesting that she come to an October 10, 2013 meeting without her attorney (*id.* at ¶¶ 108-110). The letter stated that if Plaintiff did not attend the meeting, Fisher would terminate the agreement between Community Enterprises and Plaintiff (*id.* at ¶ 111). Plaintiff asked for more information prior to the meeting, which she ultimately did not attend (*id.* at ¶¶ 114-118). On October 22, 2013, Fisher wrote a letter to Plaintiff and enclosed her final check from Community Enterprises (*id.* at ¶ 119).

III.   STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("the Civil Rules") test the sufficiency of the pleadings. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679

(2009).  To survive a motion to dismiss, a complaint must "'state a claim [for] relief that is

plausible on its face,' accepting the plaintiff's factual allegations and drawing all reasonable

inferences in the plaintiff's favor." *Maloy v. Ballori-Lage*, 744 F.3d 250, 252 (1st Cir. 2014)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint need not contain

detailed factual allegations, but it must recite facts sufficient to at least "raise a right to relief

above the speculative level . . . on the assumption that all the allegations in the complaint are true

(even if doubtful in fact)." *Bell Atl. Corp.*, 550 U.S. at 555.  When deciding a motion to dismiss,

the First Circuit has "emphasize[d] that the complaint must be read as a whole," and that

circumstantial evidence may be sufficient to surpass the plausibility threshold. *Garcia–Catalan*

*v. United States*, 734 F.3d 100, 103 (1st Cir. 2013).  At a minimum, however, a complaint must

include sufficient factual matter that, when accepted as true, would allow the court to draw "the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation

omitted).  In conducting this analysis, the court accepts as true all well-pleaded facts and draws

all reasonable inferences in favor of the plaintiff. *See Cooperman v. Individual, Inc.,* 171 F.3d

43, 46 (1st Cir. 1999).

IV.   DISCUSSION

A.   Dismissal of Count I; Count II as to Fisher and Kenney; Count III; Count V as
to Fisher and Kenney; and Count VI

At the September 16, 2015 hearing on the instant motion, the court orally dismissed with

prejudice Count I as to all Defendants; Count II as to defendants Kenney and Fisher; Count III as

to all Defendants; and Count V as to defendants Fisher and Kenney.  Plaintiff does not oppose

dismissal of Count VI as to all Defendants.  The reasons for dismissal of these claims, most of

which were previously stated in court, are set forth below.

1.   Count I

With respect to Count I, Fisher and Kenney are sued for their actions as Community Enterprises employees.  Plaintiff's Title VII claims against Fisher and Kenney cannot go forward because it is well-settled that there is no individual liability for employees under Title VII.  *See Fantini v. Salem State Coll.*, 557 F.3d 22, 31 (1st Cir. 2009); *Bolduc v. Town of Webster*, 629 F. Supp. 2d 132, 152 (D. Mass. 2009); *Horney v. Westfield Gage Co.*, 95 F. Supp. 2d 29, 33 (D. Mass. 2000); *see also* 42 U.S.C. § 2000e-3 (it shall be an unlawful practice for an *employer* to discriminate against any of his employees or applicants for employment for opposing any employment practice made unlawful under Title VII).  Plaintiff's claims under Title VII must be dismissed as to all Defendants for the additional reason that Title VII prohibits workplace discrimination "on the basis of race, color, religion, sex or national origin . . . [and] employer retaliation on account of an employee's having opposed, complained of, or sought remedies for [such] unlawful workplace discrimination."  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2522, 2525 (2013) (citing 42 U.S.C. §§ 2000e-2(a); 2000e-3(a)).  The Complaint is devoid of any allegation that Plaintiff was discriminated against on the basis of race, color, religion, sex or national origin, or that she was retaliated against for opposing unlawful workplace discrimination on any of those bases.  For the foregoing reasons, Count I is dismissed with prejudice as to all Defendants.

### 2.   Count II as to Kenney and Fisher

The ADA contains four sub-parts.  Title I addresses discrimination on the basis of disability by an "employer, employment agency, labor organization, or joint labor-management committee."  42 U.S.C. §§ 12111(2), 12112.  Title II prohibits disability discrimination in the services, programs, or activities of a "public entity."  *See* 42 U.S.C. § 12131(1).  Title III addresses discrimination on the basis of disability by places of public accommodation.  *See* 42

U.S.C. § 12181(7).  Although it is settled in this circuit that there is no individual liability under

Title I of the ADA, *see Roman-Oliveras v. Puerto Rico Elec. Power Auth.*, 655 F.3d 43, 45 (1st

Cir. 2011), it remains an open question whether an individual may be liable for retaliation under

42 U.S.C. §§ 12203(a) of the ADA, which provides, in relevant part, that "[n]o *person* shall

discriminate against any individual because such individual has opposed an act or practice made

unlawful by this chapter . . . or participated in any manner in an investigation, proceeding or

hearing under this chapter."[5]  (Emphasis supplied.)  Acknowledging the broad language in §

12203(a), "[c]ourts that have addressed individual liability for retaliation claims under the ADA

have reached different conclusions depending on what rights under the ADA are involved in the

claim." *Datto v. Harris*, 664 F. Supp. 2d 472, 488 (E.D. Pa. 2009).  Here, although Plaintiff

makes passing reference in her Complaint to Titles II and III of the ADA (Dkt. No. 5 at ¶¶ 52,

60), she does not allege that Community Enterprises is a public entity or a place of public

accommodation.  She does, however, allege in her description of the parties that Community

Enterprises is an entity covered by Title I of the ADA, i.e., an employer (Dkt. No. 5, ¶¶ 11-12),

and she argues in her opposition to Defendants' motion to dismiss that she was an employee of,

rather than an independent contractor with, Community Enterprises (Dkt. No. 36-1).  For these

reasons, and because it is the most plausible reading of the Complaint as a whole, *see Garcia-*

*Catalan*, 734 F.3d at 103, the court interprets the Complaint as asserting claims under 42 U.S.C.

§ 12203(a) against Community Enterprises in the capacity of an employer.

Title I of the ADA contains its own enforcement provision, § 12117, "which incorporates

---

[5] The ADA's interference provision provides, in relevant part, that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual . . . on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of any right granted or protected by [the ADA]."  42 U.S.C. § 12203(b).

the remedies of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-4 to -9." *Datto*, 644 F.

Supp. 2d at 486.  Title VII has long been held not to impose individual liability.  *See, e.g.,*

*Fantini*, 557 F.3d at 31.  "Courts addressing whether individual liability may be imposed under

the ADA for retaliation claims involving employment have often not distinguished between . . .

claims under Title I of the ADA and retaliation claims under [42 U.S.C.] § 12203.  Such cases

have held . . . that individual liability is not available under either type of claim," without

reference to the use of the term "person" in § 12203(a).  *Datto*, 664 F. Supp. 2d at 488-89 (citing

*Butler v. City of Prairie Village*, 172 F.3d 736, 744 (10th Cir. 1999); *McInerney v. Moyer*

*Lumber and Hardware, Inc.*, 244 F. Supp. 2d 393, 397-98 (E.D. Pa. 2002)).

Other courts, however, have analyzed the language in § 12203(a) in light of the remedial

provisions set forth in subsection (c) of § 12203, which incorporates by reference as to

employment related claims the remedies set forth in Title I of ADA.  *See* 42 U.S.C. §§ 12117,

12203(c).  Section 12117 incorporates the remedies available under Title VII.  These courts have

held that "individual liability is precluded under § 12203 where [as here] the act or practice

opposed by the plaintiff is made unlawful by Subchapter I of the ADA."  *Albra v. Advan Inc.*,

490 F.3d 826, 834 (11th Cir. 2007).  "Because Title VII has been consistently held not to provide

a remedy against individual defendants, [the *Albra* court and others] reason that, by

incorporating Title VII remedies in claims involving employment, the retaliation provision of the

ADA has been similarly limited."  *Datto*, 664 F. Supp. 2d at 489 (citing *Albra*, 490 F.3d at 832-

33; *Stern v. Cal State Archives*, 982 F. Supp. 690, 694 (E.D. Cal. 1997)); *see also Van Hulle v.*

*Pac. Telesis Corp.*, 124 F. Supp. 2d 642, 645-646 (N.D. Cal. 2000) (what remedies, if any, a

plaintiff is entitled to depends on whether the alleged retaliation occurred with respect to

employment, public services, or public accommodation).

The cases cited by Plaintiff are not to the contrary.  Those cases establish either that an employer can be liable for a retaliatory act that is not directly related to employment, *see, e.g., Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63-64 (2006) (the materially adverse action that must be shown need not be tied directly to terms and conditions of employment); *Gore v. Trustees of Deerfield Acad.*, 385 F. Supp. 2d 65, 71-73  (D. Mass. 2005) (anti-retaliation provisions of Title VII and ADA may cover employer's actions that are not directly related to terms and conditions of employment), or that an employee is protected by the ADA against retaliation for being perceived as having assisted a fellow employee to assert the right to be free from disability discrimination.  *See Fogelman v. Mercy Hosp., Inc.*, 283 F.3d 561, 564-565 (3d Cir. 2002).  None of these cases stands for the proposition that the ADA provides for individual liability for retaliatory action.  Plaintiff's reliance on the *Datto* case is also misplaced.  As is set forth above, *Datto* distinguished between § 12203 retaliation claims where the underlying claim is related to employment from those asserted against public entities or public accommodations.  *See Datto*, 664 F. Supp. 2d at 488-92.  The *Datto* court, faced only with claims asserted under Titles II and III of the ADA, distinguished the cases ruling that there is no individual liability under the ADA when the underlying claim is related to employment and concluded that ADA retaliation claims involving public services and public accommodations may be brought against individuals.  *See id.* at 491.

So far as the court has been made aware, courts have consistently held that there is no individual liability under § 12203 when, as here, the underlying claim is asserted under Title I of the ADA.[6]  Accordingly, so much of Count II as asserts claims against Kenney and Fisher is

---

[6] The court acknowledges that, in dicta, the United States Court of Appeals for the Eleventh Circuit expressed that "ultimately it remained unconvinced" by the approach of looking to the remedial sections of the ADA for purposes of determining the scope of liability under § 12203.

dismissed with prejudice.

### 3. Count III

Plaintiff has failed to state a claim for relief in Count III because the DD Act is "'a federal-state grant program whereby the Federal Government provides financial assistance to participating States to aid them in creating programs to care for and treat the developmentally disabled,'" *Roa-Mendez v. Deficiencias En El Desarrollo (CEED)*, Civil No. 11-1989CCC, 2012 WL 4092622, at *4 (D.P.R. Sept. 13, 2012) (quoting *Pennhurst State Sch. and Hosp. v. Halderman*, 451 U.S. 1 (1981)), meaning that it is "a typical funding statute." *Roa-Mendez*, 2012 WL 4092622, at *4. Consequently, the DD Act does not create any substantive rights that Plaintiff can assert, *see id.* at *5, and Count III is dismissed with prejudice as to all Defendants.

### 4. Count V

Count V alleges breaches of the Letters of Agreement signed by Plaintiff, Community Enterprises and the participants (Dkt. Nos. 23-1, 23-2). Kenney and Fisher were not parties to these contracts. Fisher did not sign either of the Letters of Agreement. Although Kenney signed one of the Letters of Agreement, she did so on behalf of Community Enterprises in her capacity as Program Manager (Dkt. No. 23-2 at 4), and cannot be held liable for any alleged violation of that agreement. *See Porshin v. Snider*, 212 N.E. 2d 216, 217 (Mass. 1965) (unless otherwise agreed, a person making or purporting to make a contract for a disclosed principal does not become a party to the contract); *see also Welgoss v. Dept. of Transp.*, Civil Action No. 2012-1549-C, 2013 WL 4007929, at *4 n.4 (Mass. Sup. Ct. June 21, 2013) (defendant acting on behalf

---

*Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1173 (11th Cir. 2003). The *Shotz* court, which was addressing retaliation claims asserted under the ADA based on discrimination in the provision of public services, did not decide the issue and went on to comment that the approach might make sense in the employment context. *See id.* at 1166, 1173-74.

of a disclosed principal cannot be held personally liable for agreements the plaintiff understood were being made on behalf of a disclosed employer).  Accordingly, Count V is dismissed with prejudice as to Kenney and Fisher.  Defendants have not moved for dismissal of Count V as to Community Enterprises.

     5.  <u>Count VI</u>

In Count VI, Plaintiff alleges that Defendants, and in particular Fisher and Kenney, "intentionally interfered with [her] independent work" for Community Enterprises in violation of section 19 of Chapter 149 of the Massachusetts General Laws (Dkt. No. 5 at ¶¶ 71-72).  No private right of action exists pursuant to this section of the statute, *see Travers-Sheik v. Habit Mgmt., Inc.*, No. Civ. A. 05-11631-GAO, 2006 WL 3775957, at *2 (D. Mass. Dec. 20, 2006), a point that Plaintiff apparently acknowledges, as she does not oppose dismissal of Count VI with prejudice (Dkt. No. 30 at 18).  Accordingly, Count VI is dismissed with prejudice as to all Defendants.

    B.  <u>Remaining counts and motion to strike</u>

     1.  <u>Count II as to Community Enterprises</u>

The Complaint alleges in Count II that Community Enterprise violated § 12203 of the ADA by retaliating against Plaintiff, or interfered with, coerced, or intimidated her, for assisting the participants in exercising rights protected by the ADA.[7]  According to Plaintiff, the Defendants violated § 12203(a) of the ADA "by terminating or causing the termination of

---

[7] To the extent Plaintiff claims that Community Enterprises retaliated against her because she exercised rights granted to her under the ADA, she has not stated the basis for any such claim because she has not alleged that she has a disability within the meaning of the ADA (Dkt. No. 5, ¶ 33). *See, e.g., Sifre v. Dept. of Health*, 38 F. Supp. 2d 91, 99 (D.P.R. 1999) (to sustain claim of disability discrimination on her own behalf, plaintiff must meet threshold burden of establishing that she is disabled), *aff'd*, 214 F.3d 23 (1st Cir. 2000).

Plaintiff's Adult Foster Care home share contracts without further payments" because she assisted the participants "in the exercise of . . . rights and privileges protected by the ADA," including assisting one of the participants with bringing a formal charge of discrimination (Dkt. No. 5 at ¶¶ 31, 41).  Community Enterprises moves to dismiss Count II on the ground that it was not plaintiff's employer for purposes of the ADA.  While it appears that Plaintiff argues that she can assert claims for retaliation and interference under the ADA whether she is an employee or an independent contractor, she further contends that the Complaint adequately alleges that Community Enterprises was her employer (Dkt. No. 30 at 9-16; Dkt. No. 36-1).

> a.  The ADA and independent contractors

The First Circuit "has not yet decided an appeal directly presenting the question whether the ADA covers only employees, although [it has] observed that the ADA and Title VII, which does not protect independent contractors, use a similar definition of the term 'employer.'"  *Dykes v. DePuy, Inc.*, 140 F.3d 31, 37 n.6 (1st Cir. 1998) (citing *Carparts Distrib. Ctr., Inc. v. Auto Wholesaler's Ass'n*, 37 F.3d 12, 16 (1st Cir. 1994)).  Numerous other federal courts, including district courts in this circuit, have held that the ADA does not protect independent contractors. *See id.*, 140 F.3d at 37 n.6 (citing cases); *see also Velez-Ramirez v. Puerto Rico*, 98 F. Supp. 3d 31, 38 (D.P.R. 2015) ("The ADA covers employees rather than independent contractors.") (citing *Alberty-Velez v. Corporacion de P.R. para la Difsion Publica*, 361 F.3d 31, 38 (1st Cir. 2004) (Title VII case)); *Dykes*, 140 F.3d at 38); *see also Mailhot v. Fedex Ground Package Sys., Inc.*, No. 02-257-JD, 2003 WL 22037314, at *1 (D.N.H. Aug. 29, 2003).  Notwithstanding that Community Enterprises has pointed to compelling authority for the proposition that the retaliation and interference provisions of the ADA do not protect independent contractors, the court declines to decide the question at this time because, regardless of the outcome, Plaintiff's

ADA claim against Community Enterprises will proceed.  *See Claudomir v. Commonwealth of Mass.*, Civil Action No. 15-cv-128670IT, 2016 WL 492754, at *4 (D. Mass. Feb. 8, 2016).

> b.  Community Enterprises has not shown as a matter of law that
>     Plaintiff was an independent contractor

The United States Supreme Court has established that when a statute such as the ADA contains the term "employee" but does not offer an informative definition, "a court must presume that Congress has incorporated traditional agency law principles for identifying 'master-servant relationships.'"  *Lopez v. Mass.*, 588 F.3d 69, 83 (1st Cir. 2009) (citing, *inter alia, Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 444-47 (2003) (considering whether physician shareholders were employees or employers for purposes of the ADA)).  "The common law element of control is the principal guidepost that should be followed [in determining whether an employer-employee relationship exists]."  *Clackamas*, 538 U.S. at 448. "In particular, the Court in *Clackamas* was persuaded that courts should look to the guidelines in the EEOC's Compliance Manual to address the question of when a person is an 'employee.'"  *Lopez*, 588 F.3d at 85.[8]

Those guidelines note that whether an employer-employee relationship exists is fact-specific, and, in their current form, include the following list of non-exhaustive factors indicating that a worker is in an employment relationship:

- The employer has the right to control when, where, and how the worker performs the job.
- The work does not require a high level of expertise.

---

[8] Plaintiff's citations to cases decided under state and federal wage and hour laws and to state and federal wage and hour regulations are unhelpful (Dkt. No. 36-1 at 4-7).  In the *Clackamas* and *Lopez* cases, the United States Supreme Court and the First Circuit have established the common law agency test as the test to be applied to the question of whether an individual is an employee or an independent contractor for purposes of the ADA, and those decisions are binding on this court.  *See, e.g., Jepson v. Deutsche Bank. Nat. Trust Co.*, 969 F. Supp. 2d 202, 207 (D. Mass. 2013).

- The employer furnishes the tools, materials, and equipment.
- The work is performed on the employer's premises.
- There is a continuing relationship between the worker and the employer.
- The employer has the right to assign additional projects to the worker.
- The employer sets the hours of work and the duration of the job.
- The worker is paid by the hour, week, or month rather than the agreed cost of performing a particular job.
- The worker does not hire and pay assistants.
- The work performed by the worker is part of the regular business of the employer.
- The employer is in business.
- The worker is not engaged in his/her own distinct occupation or business.
- The employer provides the worker with benefits such as insurance, leave, or workers' compensation.
- The worker is considered an employee of the employer for tax purposes (i.e., the employer withholds federal, state, and Social Security taxes).
- The employer can discharge the worker.
- The worker and the employer believe that they are creating an employer-employee relationship.

EEOC Compliance Manual § 2: Threshold Issues, 2009 WL 29666755, at *1 (Aug. 2009).  "Not all or even a majority of the listed criteria need be met," nor is the parties' characterization of the relationship determinative.  *See id.* at *2.

At the motion to dismiss stage, the court cannot say that application of these criteria results in a determination as a matter of law that Plaintiff was an independent contractor.  As to some factors, no determination can be made at this stage of the litigation.  As to others, there are allegations that would tend to support a conclusion that Plaintiff was an employee:  there was a continuing relationship between Community Enterprises and Plaintiff; Plaintiff was paid by the month rather than the agreed cost of performing a particular job; the work she performed – providing supported housing to individuals with special needs – was a regular part of the business of Community Enterprises, which was, as an entity, in the business of providing services to disabled adults; Plaintiff was not engaged in her own distinct occupation or business; the work did not require a high level of expertise; and Community Enterprises was able to discharge Plaintiff, as, according to the Complaint, it did.

There are also facts alleged or reasonably inferable from the pleadings and supporting documents that would favor finding that Plaintiff was not a Community Enterprises employee: the work was performed at Plaintiff's home and not on Community Enterprises premises; and, for the most part, it does not appear that Community Enterprises furnished tools, materials and equipment.  It is reasonable to infer from the Letters of Agreement that Plaintiff was not considered an employee of Community Enterprises for tax purposes, and she has not alleged that Community Enterprises afforded her employment benefits such as insurance, paid leave, or workers' compensation.

As to other factors, including the critical factor of control over *how* Plaintiff performed the work that was the subject of the Letters of Agreement, Community Enterprises is asking this court to draw inferences from the Complaint and related documents that are not the only reasonable inferences that can be drawn.  This the court cannot do.  *See, e.g., Cooperman*, 171 F.3d at 46.  According to Community Enterprises, the work that Plaintiff was hired to do was to ensure that the participants were full participants in her household, and the Letters of Agreement left her with almost unfettered discretion in how she achieved that goal.  This is sufficient, according to Community Enterprises, to establish that Plaintiff was an independent contractor with, rather than an employee of, Community Enterprises (Dkt. No. 23 at 9-11; Dkt. No. 35-1 at 7-8).  If, however, all reasonable inferences are drawn in Plaintiff's favor, the Complaint and the related documents can be viewed as presenting a picture of substantial control by Community Enterprises over when, how and even, to some extent, where Plaintiff performed her work for Community Enterprises, since she was required to consult in advance with Community Enterprises if she planned to take a participant on vacation with her or even out of her home (Dkt. No. 23-1 at 3; Dkt. No. 23-2 at 3).  Plaintiff's daily and weekly duties and responsibilities

were set out in detail in the Letters of Agreement, including, but not limited to, providing meals

three times a day and snacks, supervising health related activities such as taking daily

medications and complying with medical instructions from physicians and Community

Enterprises, doing laundry, providing or arranging for transportation, and shopping for

participants (Dkt. No. 23-1; Dkt No. 23-2).  She was required to maintain the residence to

standards monitored by Community Enterprises, and was responsible for providing support and

supervision to each participant as directed by Community Enterprises.  In performing her work,

Plaintiff was subject to the on-going supervision of Community Enterprises with visits to the

work site (Plaintiff's home) on a schedule determined solely by Community Enterprises (Dkt.

No. 23-1 at 4; Dkt. No. 23-2 at 4).  The Complaint alleges that Plaintiff was warned that

Community Enterprises would try to "take over" her home, something that she perceived was

happening, and includes allegations of intrusive oversight by Community Enterprises (Dkt. No.

5-1 at ¶¶ 18, 20, 68, 80-81).

It may well be that, on a more fully developed record, the contentions Community

Enterprises makes about Plaintiff's status or role will carry the day.  This is however, a fact

intensive question more suitable for resolution on summary judgment or at trial than on a motion

to dismiss.  "For purposes of Fed. R. Civ. P. 12(b)(6), the possibility of a claim is enough to

defeat dismissal."  *Carparts*, 37 F.3d at 17.  For the foregoing reasons, the court declines to

dismiss Plaintiff's ADA claim against Community Enterprises at this time.

   c.  <u>Motion to strike</u>

In her prayer for relief, Plaintiff asks the court to assess a civil penalty of $55,000 against

each defendant pursuant to 42 U.S.C. § 12188(b)(2) (Dkt. No. 5 at 20, ¶ 5).  To the extent

Plaintiff seeks in Count II to assert a claim under § 12188(b) of the ADA, a point that is not clear

from the Complaint (Dkt. No. 5 at ¶¶ 52, 60), any such claim would be subject to dismissal with prejudice.  No private right of action is available under that section of the ADA because, by its terms, it grants the United States Attorney General the authority to investigate alleged violations of Title III of the ADA (disability discrimination by public accommodations) and to file civil actions when such violations are found.  Defendants move, for this reason, to strike Plaintiff's request that the court impose civil penalties authorized by 42 U.S.C. § 121188(b)(2) and 28 C.F.R. § 36.504(a)(3) on the Defendants (Dkt. No. 23 at 11).  Because any claim by Plaintiff under § 12188(b) would be subject to dismissal with prejudice, and because a civil penalty premised on this section of the statute may be assessed only when the United States Attorney General prevails on a claim of discrimination under Title III of the ADA against an entity that has committed a second or subsequent violation, *see* 42 U.S.C. § 12188(b)(2), Defendants' motion to strike is granted.  Paragraph five of Plaintiff's Prayer for Relief is therefore stricken.

### 2.  Count IV as to all Defendants

Section 4(4) of Chapter 151B makes it unlawful for "any person . . . to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under [Chapter 151B, § 5]," while section 4(4A) makes it unlawful for "any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter, or to coerce, intimidate, threaten or interfere with such other person for having aided or encouraged any other person in the exercise or enjoyment of any such right granted or protected by this chapter."  Mass. Gen. Laws ch. 151B, § 4(4A).  Finally, section 4(5) of Chapter 151B makes it an unlawful practice "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden

under this chapter or to attempt to do so."  According to Plaintiff, "Defendants' malicious and reckless disregard" of her "rights to . . . assist disabled persons with the exercise of and enforcement of their legally protected rights" and the termination of her agreements with Community Enterprises was retaliatory in violation of the relevant provisions of Chapter 151B (Dkt. No. 5, ¶¶ 62-63).  In seeking dismissal of Plaintiff's Chapter 151B claims, Defendants contend that (a) the statute does not protect independent contractors, which was Plaintiff's status in her relationship with Community Enterprises; and (b) Plaintiff has failed to allege that she engaged in activity protected under the statute.[9]  At least at the motion to dismiss stage, the court is not persuaded.

    a.  <u>Chapter 151B and independent contractors</u>

According to Defendants, whether an independent contractor may bring a retaliation claim against the party for whom the independent contractor is working is a question of first impression under Massachusetts law (Dkt. No. 35-1 at 3).  In these circumstances, the court should attempt to predict how the Massachusetts Supreme Judicial Court ("SJC") would rule on the issue.  *See Vicarelli v. Bus. Intern., Inc.*, 973 F. Supp. 241, 244 (D. Mass. 1997).  On the one hand, the SJC is on record as to the breadth of Chapter 151B's anti-retaliation provisions.  In *Psy-Ed Corp. v. Klein*, 947 N.E.2d 520 (2011), the court ruled that a former employee could bring a claim of retaliation.  Addressing the classes of those protected under §§ 4(4) and 4(4A), the SJC observed that "[s]ection 4(4) addresses action taken by 'any person' against 'any person,' while § 4(4A) concerns actions taken by 'any person' against 'another person.'  In

---

[9] It is well-settled that, in appropriate circumstances, there can be individual liability under Chapter 151B.  *See, e.g., Martin v. Irwin Indus. Tool Co.*, 862 F. Supp. 2d 37, 38-41 (D. Mass. 2012).  Defendants do not argue otherwise and do not seek dismissal of the claims against Fisher and Kenney on the basis that Chapter 151B does not provide for individual liability.

neither case does the statute expressly require that an employer-employee relationship exist at the time of the wrongful conduct *or at any other time.*"  *Id.* at 531 (emphasis supplied).[10]  The *Psy-Ed* court concluded that, in view of the broad remedial purposes of the statute, it would be wrong to imply limitations not found in the statutory language.  *See id.*  This relatively expansive reading of Chapter 151B's retaliation provisions suggests that the SJC might read the provisions here invoked by Plaintiff as protecting an independent contractor who was discharged or otherwise discriminated against for opposing a forbidden practice or assisting in a proceeding brought under section 5 of Chapter 151B.  *See* Mass. Gen. Laws ch. 151 B, §§ 4(4), 4(4A).

On the other hand, the SJC and the Massachusetts Appeals Court have been cautious about expanding the reach of the Commonwealth's anti-discrimination statutes outside of the traditional employee-employer setting.  In *Lowrey v. Klemm*,  845 N.E.2d 1124 (Mass. 2006), for example, the SJC held that a volunteer could not sue for sexual harassment under section 1C of Chapter 214 of the Massachusetts General Laws ("Section 1C").  Section 1C, which provides that "[a] person shall have the right to be free from sexual harassment," incorporates Chapter 151B's definition of sexual harassment.  The *Lowrey* court held that, although "'person' is a broad term, the definition[] of sexual harassment in G.L. c. 151B . . . expressly incorporated into G.L. c. 214, § 1C, limits the reach of [Chapter 151B]:  these provisions define as 'sexual harassment' only conduct that affects 'a term or condition of employment' or serves as 'a basis for employment decisions, . . . [or] creates 'an intimidating, hostile, humiliating or sexually offensive work environment[.]'"  *Lowrey*, 845 N.E.2d at 1128.  The majority in *Thomas*

---

[10] Defendants characterize this statement as irrelevant dicta (Dkt. No. 35-1 at 4).  Speaking of the United States Supreme Court, the First Circuit has said that "federal appellate courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when . . . a dictum is of recent vintage and not enfeebled by any subsequent statement."  *McCoy v. Mass. Inst. of Tech.*, 950 F.2d 13, 19 (1st Cir. 1991).

*O'Connor Constructors, Inc. v. Mass. Comm'n Against Discrimination*, 893 N.E.2d 80, 86

(Mass. App. Ct. 2008) observed that "no Massachusetts appellate decision ever has interpreted §

4(4A) to make an employer liable to someone other than its employee, [although] the statutory

language admits of such a result." There is, in addition, the longstanding rule, announced in

*Comey v. Hill*, 438 N.E.2d 811, 814 (Mass. 1982), that Chapter 151B should "not be read as

intending to broaden the definition of employee to include an independent contractor." *See also*

*Speen v. Crown Clothing Corp.*, 102 F.3d 625, 629 (1996) (same).

     A ruling that independent contractors are protected against retaliatory action under

Chapter 151B might place Massachusetts in the minority, but it would not be alone. The

Supreme Court of Washington has ruled that Washington's civil rights law protects an

independent contractor from discrimination in the making or performance of a contract where the

alleged discrimination is based on disability, among other protected characteristics. *See Marquis*

*v. City of Spokane*, 922 P.2d 43, 45 (Wash. 1996). That protection applies as well to a claim of

retaliation by an independent contractor. *See Currier v. Northland Servs., Inc.*, 332 P.3d 1006

(Wash. App. 2014). In *Currier*, the plaintiff was a subcontractor truck driver for the defendant,

Northland Services, Inc. ("NSI"). Plaintiff made a report to NSI about racial harassment directed

by fellow truck drivers – also NSI subcontractors – at other NSI subcontractors. NSI terminated

Plaintiff's contract in retaliation for his report about the harassment. *Id.* at 1009-10. Relying on

the *Marquis* decision, the Washington Court of Appeals ruled that an independent contractor

complaining about retaliation against another independent contractor was protected from

retaliation. *See id.* at 1011-12. *Cf. Ashkenazi v. S. Broward Hosp. Dist.*, 607 Fed. Appx. 958,

965 (11th Cir. 2015) (unpublished) (court observed that it was unaware of any Florida appellate

case expressly construing state civil rights act's "any person" retaliation provision as pertaining

only to employees and not to independent contractors).

In other jurisdictions, courts have concluded that state human rights statutes do not protect independent contractors, although these rulings are not all in the context of retaliation claims. *See, e.g., Birchem v. Knights of Columbus*, 116 F.3d 310, 314 (8th Cir. 1997) (North Dakota Human Rights Act does not protect individual contractors); *Ebelt v. County of Ogemaw*, 231 F. Supp. 2d 563, 576 (E.D. Mich. 2002) (citing *Falls v. Sporting News Publ'g Co.*, 834 F.2d 611, 613 (6th Cir. 1987)) (independent contractor cannot bring retaliation claim under state civil rights act); *Sloan v. Bankers Life & Cas. Co.*, 1 S.W.3d 555, 562 (Mo. Ct. App. 1999) (Missouri human rights act applies to employer-employee relationships, not independent contractor relationships).

The court declines at this time to decide the difficult question of whether the SJC would be likely to rule that Chapter 151B protects an independent contractor asserting a retaliation claim in the circumstances alleged by Plaintiff because, regardless of the outcome, Plaintiff's ADA claim against Community Enterprises will proceed. *See Claudomir*, 2016 WL 492754, at *4 (declining to decide whether there was individual liability under Title II of the ADA when claims would, in any event, go forward at summary judgment stage).

b. Defendants have not shown as a matter of law that Plaintiff was an independent contractor for purposes of Chapter 151B, §§ 4(4) and 4(4A)

"Courts in Massachusetts and the First Circuit determine whether a party is an employee or independent contractor based upon 'traditional agency law principles.' *Speen*, 102 F.3d at 631. Those principles apply equally to claims brought under the federal [ADA] and the Massachusetts Anti-Discrimination Statute. *See id.* at 627-34." *Santangelo v. N.Y. Life Ins. Co.*, Civil Action No. 12-11295-NMG, 2014 WL 3896323, at *7 (D. Mass. Aug. 7, 2014); *see also Barton v. Clancy*, 632 F.3d 9, 17-18 (1st Cir. 2011) (for purposes of interpreting term

"employer," in Chapter 151B, federal courts look to federal decisions interpreting the term

"employer" under federal antidiscrimination statutes). For the reasons set forth above in

connection with Plaintiff's claim under the ADA, Defendants have not shown as a matter of law

that Plaintiff was an independent contractor rather than an employee for purposes of Chapter

151B.

      c.  <u>Plaintiff has adequately alleged that she engaged in activity</u>
          <u>protected under Chapter 151B</u>

To state a claim for retaliation under Chapter 151B, a plaintiff must allege that she

engaged in protected conduct, that she suffered some adverse action, and that there was a causal

connection between the protected conduct and the adverse action. *See Psy-Ed*, 947 N.E.2d at

530; *Mole v. Univ. of Mass.*, 814 N.E.2d 329, 338-39 (Mass. 2004). Complaining to

management about discriminatory conduct, meetings to discuss opposition to discriminatory

conduct, writing critical letters to stakeholders, protesting against discrimination by the industry,

expressing or providing support for others who file formal charges, or requesting

accommodation for a disabled person "can trigger the protections of c. 151B." *Ritchie v. Dept.*

*of State Police*, 805 N.E.2d 54, 62 (Mass. App. Ct. 2004) (filing formal complaint, complaining

to management, filing an internal complaint, or meeting with co-workers to plan opposition to

workplace discrimination is protected conduct); *see also Fantini*, 557 F.3d at 32 (employee who

makes a charge, testifies, assists or participates in any manner in an investigation, proceeding or

hearing engages in protected conduct) (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209

(2d Cir. 1990)); *Sifre*, 38 F. Supp. 2d at 102 (requesting accommodation for disabled person is

protected activity) (*citing Barker v. Int'l Paper Co.*, 993 F. Supp. 10, 16 (D. Me. 1998)).

Moreover, a plaintiff "'must demonstrate only that [she] had a good faith, reasonable belief that

the underlying challenged actions . . . of the employer violated the law.'" *Fantini*, 557 F.3d at 32

(quoting *Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125, 134 (2d Cir. 1999), cert. denied, 528 U.S. 964 (1990)).

The Complaint adequately alleges acts by Defendants that Plaintiff might reasonably have believed constituted disability discrimination by Defendants and that she engaged in protected activity in response to Defendants' actions.  Plaintiff alleges that, in response to action or inaction by Community Enterprise – and others – in the face of alleged workplace harassment directed at a disabled individual, she protested to Community Enterprises and arranged for legal representation for one of the participants and supported the participant in filing a formal discrimination complaint (Dkt. No. 5 at ¶ 31; Dkt. No. 5-1 at ¶¶ 2-3, 28, 61-66), and that she assisted the other participant with the informal exercise of rights under Title VII and the ADA (Dkt. No. 5 at ¶ 32).  She has also adequately alleged causation:  according to Plaintiff, two days after Plaintiff's attorney sent a letter to Community Enterprises setting forth discrimination claims on behalf of the participant who filed a formal discrimination charge, Fisher demanded that Plaintiff attend a meeting without her attorney, threatening to terminate Plaintiff's agreement with Community Enterprises if Plaintiff failed to comply (Dkt. No. 5-1 at ¶¶ 107-110).  When Plaintiff failed to attend, Community Enterprises, through Fisher, sent Plaintiff a letter enclosing her final payment from Community Enterprises (*id.* at ¶ 119).  *See Mole*, 814 N.E. 2d at 341 ("Where adverse employment actions follow close on the heels of protected activity, a causal relationship may be inferred.") (citing *Oliver v. Digital Equip. Corp.*, 846 F2d 103, 110 (1st Cir. 1988)).

It is doubtful that Plaintiff's general advocacy activities on behalf of the participants, alleged at length in the Complaint, constitute protected activity because, in most respects, she has not alleged that those activities related to conduct by Defendants prohibited by the ADA and

related to employment, public services, or public accommodations.  In *Sifre*, 38 F. Supp. 2d at

91, a case with factual similarities to the case at bar, the plaintiffs were employed to conduct

various advocacy activities on behalf of individuals with HIV/AIDS.  *Id.* at 94.  The plaintiffs

lost their jobs and sued their employer under the anti-retaliation provisions of the ADA, alleging

that the Department of Health had discriminated against them for their advocacy on behalf of

HIV/AIDS patients.  The court dismissed the ADA claims on the grounds that the activities

identified in the complaint, which involved policy positions the plaintiffs took concerning

Department of Health regulations and reports, did not relate to any forms of discrimination

prohibited by Titles I (employment), II (public benefits) or III (public accommodations) of the

ADA and were not ADA-protected activities.  *See id.* at 102-103.  The First Circuit affirmed

dismissal of the claims for the reasons stated by the District Court.  *See Oliveras-Sifre*, 214 F.3d

at 26-27.

While many of Plaintiff's allegations are likely not relevant to a cognizable retaliation

claim, drawing all reasonable inferences in her favor, she has – if barely – adequately alleged

that Defendants retaliated against her for engaging in protected conduct related to the

participants.  *See Fantini*, 557 F.3d at 32; *Sifre*, 38 F. Supp. 2d at 102; *Ritchie*, 805 N.E.2d at 62.

Accordingly, so much of Defendants' motion to dismiss as is directed at Count IV will be

denied.

### 3.  Count VII is dismissed because the Complaint fails to allege misrepresentation with sufficient particularity

Count VII alleges that Defendants misrepresented the disabilities of the participants

Plaintiff cared for so that Plaintiff would accept a lower stipend for the services she provided (*id.*

at ¶ 75).  "[M]isrepresentation must, under the Civil Rules, be pleaded with specificity."  *Powers

v. Boston Cooper Corp.*, 926 F.2d 109, 111 (1st Cir. 1991); *see also Alternative Sys. Concepts,*

*Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004).  Rule 9(b) of the Civil Rules ("Rule 9(b)")

requires that a complaint specify the time, place, and content of the alleged false or fraudulent

representations.  *See, e.g.*, *Powers*, 926 F. 2d at 111; *Alternative Sys. Concepts, Inc.*, 374 F.3d at

29.  Plaintiff's Complaint is wholly deficient in this respect.  It contains no factual allegations

that would support a claim of intentional or negligent misrepresentation and, therefore,

completely fails to comply with Rule 9(b).  Plaintiff does not oppose dismissal of Count VII if

the dismissal is without prejudice (Dkt. No. 30 at 18).  Accordingly, Count VII is dismissed

without prejudice as to all Defendants.

     V.      CONCLUSION

     For the foregoing reasons, it is hereby ORDERED that Defendants' Motion to Dismiss be

GRANTED in part and DENIED in part, as follows: Count I is dismissed with prejudice as to all

defendants; Count II is dismissed with prejudice as to defendants Fisher and Kenney; Count III is

dismissed with prejudice as to all defendants; Count V is dismissed with prejudice as to Fisher

and Kenney; Count VI is dismissed with prejudice as to all Defendants; and Count VII is

dismissed without prejudice as to all Defendants.  Defendants' Motion is DENIED with respect

to Count II as to Community Enterprises and Count IV as to all Defendants.  To the extent

Plaintiff desires to amend her complaint, she shall file a motion for leave to do so within forty-

five (45) days of the issuance of this Memorandum and Order.


DATED:  March 23, 2016          /s/ Katherine A. Robertson_____
                               KATHERINE A. ROBERTSON
                               United States Magistrate Judge